## BLAUM v. DET. T. & I. RD. CO.

Ohio Appeals, 4th Dist., Pike Co.

Decided Apr. 26, 1928.

**First Publication of This Opinion.**

Syllabus by Editorial Staff.

**REAL ESTATE**

(510 A4) In proceedings to enjoin a railroad company from removing a fence along its right of way, wherein it appeared that many years ago a railroad company's predecessors had appropriated a strip of land, and a fence had been erected and maintained so that part of the strip so appropriated had been, for a period of forty years, used and considered as part of an abutting farm, the court will interfere to prevent the removal of the fence; nor does the call in the deed to the farm, naming the center of the right of way, have any effect, it appearing that the part used shifted from time to time.

**RAILROADS**

(500 R) A railroad, not owning the fee in its right of way, may abandon any part thereof, by fencing in a narrower strip than that appropriated, and continuing to use the same for a period of years.

Appeal from Common Pleas.
Decree for plaintiff.

G. W. Rittenour, Piketon, for Blaum.

Luther B. Yayle and Wallace Visscher, Chillicothe, for Rd. Co.

STATEMENT OF FACTS.

This is an action to enjoin the railroad company from removing a certain fence which the plaintiff claims is now standing on the line between the lands of plaintiff and the right of way of the railroad company.

The petition alleges that plaintiff is the owner of certain real estate which abuts on the right of way of the defendant company and that a fence has been maintained for more than forty years between the properties of the plaintiff and the defendant company, and that this fence has always been recognized as defining the line between the plaintiff's farm and the right of way of the railroad company. The petition further alleges that the defendant company is about to remove said fence and to construct a new fence on the lands of the plaintiff at a distance of from one to twenty-five feet from the old fence, and that the defendant company is also undertaking to eliminate two or three gates that now form a part of said fence. The petition asks for a permanent injunction restraining the defendant company from changing the location of the fence and eliminating any gates now used by the plaintiff. For answer to this petition the railroad company alleges that it owns a right of way along the southwestern side of plaintiff's farm extending for a distance of fifty feet from the center of its railroad track and that in the construction of the new fence it was undertaking to place the same upon the line of its right of way. The defendant further says that for some years it did not need all of its right of way next to the land of plaintiff for railroad purposes and that it permitted the adjoining land owner to use a part of said right of way next to his land but such use was permissive and not adverse. It denies that it was undertaking to build a fence upon the land of the plaintiff, but alleges that the fence it intended to build was on the line between its right of way and the lands of the plaintiff.

MIDDLETON, P.J.

It appears from the evidence, which was largely in the form of an agreed statement of facts, that the plaintiff is the owner of eighty acres of land which he purcahsed in 1918 from one Mrs. Emory, and that said land and other lands of the plaintiff abut on the right of way of the defendant company. It further appears that in 1876 this right of way was duly appropriated by The Springfield, Jackson and Pomeroy Railroad Company, a predecessor in title to the defendant herein, and that by such appropriation the railroad company procured a right of way one hundred feet wide through and over the eighty acre tract aforesaid. It further appears that after this right of way was secured the railroad company, then in possession of such right of way, constructed a fence between its right of way and the lands of the plaintiff and that such fence has ever since been maintained as then constructed by the building railroad company and its successors, and that said fence has stood in its present location for approximately forty-eight years; that during said time the various owners of the land now held by the palintiff occupied said lands to the fence aforesaid; that the grantor of the plaintiff herein held such possession for approximately twenty-eight years and the plaintiff has had such possession for the past ten years. Under these facts it is the contention of the plaintiff that his possession may be tacked to or united with the possession of his grantor in order to make a continuous and adverse possession in him for the required term of twenty-one years. Zipf v. Dalgarn, 114 OS. 291, 151 NE. 174; Powers v Malavazos, et al, 158 NE. 654. To this claim, however, the defendant company maintains that

the description of the land now held by plaintiff as contained in his deed therefor specifically excludes the disputed strip for the reason that said description contains this exception:

"Save and except the right of way of the Detroit, Toledo and Ironton Railroad Company."

The railroad company contends that by reason of this exception in the deed that such deed does not include in its boundaries the land in dispute and that possession can not tack where the deed under which the occupant claims possession does not convey the disputed land. It is apparent that counsel for the defendant company are confused in their claim in this respect for a reference to the deed as it appears of record, shows that such deed does not contain the exception claimed. The call of the line in dispute as it appears in said deed is as follows:

"Beginning at a stake in the line of Rickey's land fifty feet from the center of the Ohio Southern Railroad (now known as the D. T. and I. Railroad) track where said line crosses the same; thence in a line parallel with said railroad track north 28¾ west 54 poles to a stake."

This call begins at a point fifty feet from the center of the railroad track. There is nothing in the evidence to show that the center of the railroad track at the time these conveyances were made was or is now the center line of the right of way as it was originally appropriated. It is, we think, a safe presumption that during the last fifty years the track has varied in its position in respect to the centre line of the right of way. At any rate, it is not shown that the description contained in said deed specifically excludes the land in dispute here from the grant therein made.

As before observed, after the land was appropriated this fence was constructed by the then holding railroad company. That company thereby by its action fixed the limits of that part of the right of way it then desired to use in the operation of its road, and it thereby excluded itself from the remainder of such right of way and for forty-eight years neither that company nor any of its successors have made any claim to or in any manner occupied or used the remainder of the right of way so excluded. It follows from this fact that the different companies which have operated the road during that time have lost their right by non-user to that part of the right of way so excluded and are conclusively presumed to have abandoned that portion of the right of way. This was the rule adopted by the Supreme Court in Platt v. Railroad Company, 43 OS. 228, and followed by this court in Railroad Company v. Village of Oak Hill, 157 NE. 817. It must be remembered that the fee to this right of way is not in the defendant and was not appropriated by the proceedings brought in 1876. The defendant company holds only an easement in the land so appropriated, which is only the right to use such lands for the operation of its railroad.

In the instant case the various companies owning the right of way in question have continuously maintained a fence which defined that part of the right of way they desired to use and did use for railroad purposes. It would be difficult to conceive of any action which would more strongly and effectively indicate what portion of the right of way they

regarded as necessary to hold in the use and operation of the railroad. · They could not define the limits of the portion they desired to use more completely than the fence shows they have done in this case.

These facts establish conclusively, in our judgment, an abandonment of that part of the right of way which has never been occupied or used by the railroad company and has been excluded in the manner referred to from that part of the right of way which has been used. It is manifest, therefore, from the foregoing facts that the fence described in the pleadings and in the evidence as it now stands must be held to define the dividing line between the plaintiff's land and the defendant's right of way. The defendant company is perpetually enjoined from changing the location of said fence.

Without considering in detail what the evidence shows in respect to the gates, we think that the maintenance of two gates, one on the tract of land containing eight acres and the other on the lands of the plaintiff lying immediately north of said tract, should be sufficient. These gates should be continued in their present location.

(Mauck, J., concurs; Thomas, J., dissents.)